UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| Samuel A.,<br><br>            Plaintiff,<br><br>   v.<br><br>NANCY A. BERRYHILL,<br>Deputy Commissioner of Social<br>Security for Operations,<br><br>            Defendant. | CASE NO. 3:18-cv-05466-JRC<br><br>ORDER |

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13. *See* Dkt. 2, Consent to Proceed before a United States Magistrate Judge. This matter has been fully briefed. *See* Dkts. 10, 11, 12.

After considering and reviewing the record, the Court finds that the ALJ failed to provide clear and convincing reasons for discounting plaintiff's testimony regarding the severity of his impairments. First, the fact that plaintiff has carried on certain daily activities does not necessarily detract from his testimony that he is unable to work.

ORDER - 1

Second, the ALJ's finding that plaintiff failed to seek treatment is not supported by substantial evidence, and plaintiff offered an explanation, which the ALJ failed to properly consider. These errors are not harmless because had the ALJ properly considered plaintiff's testimony regarding his mental and physical limitations, the ALJ may have included additional limitations in plaintiff's residual functional capacity ("RFC"), and in the hypotheticals presented to the vocational expert ("VE").

Therefore, this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Deputy Commissioner of Social Security ("Commissioner") for further proceedings consistent with this Order.

Because the ALJ's errors relating to plaintiff's subjective symptom testimony affect the entire proceedings, and plaintiff will be able to present new evidence and new testimony on remand, the ALJ must reassess plaintiff's testimony, the medical evidence, the RFC, and the findings at step and five, if necessary.

## BACKGROUND

Plaintiff was born in 1971 and was 40 years old on the alleged date of disability onset of April 4, 2011. *See* AR. 19, 173. Plaintiff has completed one year of college. AR. 206. Plaintiff has worked in interior design and photography. AR. 196.

According to the ALJ, plaintiff has at least the severe impairments of "multiple sclerosis; degenerative disc disease of the lumbar and thoracic spine; and mental health conditions described as depression and marijuana use disorder (20 C.F.R. [§§] 404.1520(c) and 416.920(c))." AR. 21.

## PROCEDURAL HISTORY

On April 4, 2014, plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits ("DIB"). AR. 19, 173-77. Plaintiff also protectively filed a Title XVI application for supplemental security income ("SSI") on April 4, 2014, 2011. AR. 19, 178-83. The applications were denied initially and following reconsideration. *See* AR. 19, 68, 69. Plaintiff's requested hearing was held before ALJ Gary Robeck ("the ALJ") on October 13, 2016. *See* AR. 34-54. On November 29, 2016, the ALJ issued a written decision and concluded that plaintiff was not disabled pursuant to the Social Security Act. *See* AR. 16-33. Plaintiff requested review by the Appeals Council, which denied his request for review on April 5, 2018. AR 1-6. Plaintiff then initiated this civil action. Dkt. 1.

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Whether the ALJ properly evaluated plaintiff's testimony; (2) Whether the ALJ failed to fully and fairly develop the record; (3) Whether the ALJ properly evaluated the medical evidence; and (4) Whether the ALJ properly assessed plaintiff's residual functional capacity ("RFC") and erred in the step five finding. Dkt. 10 at 2. Plaintiff requests that the Court remand for further proceedings. Dkt. 10 at 2, 19.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

DISCUSSION

(1) Whether the ALJ properly evaluated plaintiff's testimony.

Plaintiff contends that the ALJ erred when failing to credit fully his allegations and testimony. Dkt. 10. Plaintiff testified that he is unable to work because of his physical and mental impairments. AR. 44-45. Plaintiff testified that he has a very hard time communicating with people, he gets frustrated and confused often, he loses his personal belongings, and he is unable to control his emotions. AR. 39, 45-48. Regarding his fatigue, plaintiff testified that does not "have energy to do stuff," and he lays down three times per day for approximately 45 minutes to one hour. AR. 47. Plaintiff testified that when he tries to do work, he gets hot and falls over. AR. 40. Plaintiff is unable to be in the heat and not able to overexert himself. AR. 40. During the day, plaintiff does not do much, he watches television, looks at the computer, and generally tries to "stay out of the way." AR. 43. He has pain in his buttocks when he sits or walks 50 feet. AR. 43-44. Plaintiff testified that he can concentrate for 10 minutes, after that he loses interest. AR. 48.

The ALJ rejected plaintiff's testimony reasoning that it was inconsistent with: (1) plaintiff's activities; (2) plaintiff's treatment history; and (3) the objective medical evidence. AR. 24-27.

The ALJ's determinations regarding a claimant's statements about limitations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722

(9th Cir. 1998) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*)).  In evaluating a claimant's allegations of limitations, the ALJ cannot rely on general findings, but "'must specifically identify what testimony is credible and what evidence undermines the claimant's complaints.'"  *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (quoting *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)); *Reddick,* 157 F.3d at 722 (citations omitted); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citation omitted).

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281-82 (citing *Cotton v. Bowen*, 799 F.2d 1407-08 (9th Cir. 1986)). First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen,* 80 F.3d at 1281-82.  If an ALJ rejects the testimony of a claimant once an underlying impairment has been established, the ALJ must support the rejection "by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1284 (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)); *see also Reddick,* 157 F.3d at 722 (citing *Bunnell*, 947 F.2d at 343, 346-47).

A. <u>Plaintiff's activities</u>

The Ninth Circuit has recognized two grounds for using daily activities to form the basis of an adverse credibility determination: (1) whether the activities contradict the claimant's other testimony and (2) whether the activities of daily living meet "the threshold for transferable work skills." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

"A single discrepancy fails, however, to justify the wholesale dismissal of a claimant's testimony." *Popa v. Berryhill*, 872 F.3d 901, 906-07 (9th Cir. 2017).

The ALJ found that plaintiff's activities were inconsistent his alleged symptoms and limitations. AR. 26. The ALJ cited to plaintiff's work history, ability to drive, shop at stores and on the internet, and manage his money. AR. 26.

1. *Work history*

The ALJ found that plaintiff's reports of working as a web designer, working on an internet business, and doing photography "strongly suggest[] that [plaintiff] could perform and sustain unskilled work." AR. 27.

As an initial matter, because plaintiff earned less than substantial gainful levels, it is undisputed that this work did not satisfy the ALJ's step-one inquiry or qualify as past relevant work. *See* Dkt. 10, 11; AR. 21.

The record reflects that plaintiff's work history is much more limited than the ALJ noted. Plaintiff testified that he last worked in 2007, and since then, he has tried to work, but he did not make any money. AR. 38-39. In a May 2014 treatment note, plaintiff reported that he was self-employed as a photographer, had not worked in over a year, and did not feel capable of running a business. AR. 318. With respect to plaintiff's web design, plaintiff reported that he spent most of his time "star[ing] at the computer" and "nearly completed" two websites, but only made four sales in seven months. AR. 380. Plaintiff reported that he needed to take "a number of steps" before another website could "go live," but he found himself unmotivated to do so. AR. 380. *See also* AR. 381.

While this evidence is relevant, plaintiff's unsuccessful attempts at part-time work do not provide substantial evidence to support the ALJ's adverse credibility determination. *See Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("[o]ccasional symptom-free periods—and even the sporadic ability to work—are not inconsistent with disability"). None of these activities are inconsistent with plaintiff's testimony nor do they show that plaintiff could perform any type of full-time work on a sustained basis.

The Commissioner also cites *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009), for the proposition that part-time work can undermine subjective complaints. Dkt. 11 at 10. *Bray*, however, is inapposite. In *Bray,* the claimant was successful in her recent part-time work; and that fact coupled with seeking out other employment after that work concluded provided a permissible rationale to discount her testimony. *Id.* at 1221-27. Here, by contrast, plaintiff was unable to maintain part-time work; nor did plaintiff work for pay since 2007. *Bray*, therefore, does not control here.

Therefore, this is not a clear and convincing reason to reject plaintiff's subjective symptom testimony.

2. *Ability to drive, shop, and manage money*

The ALJ also found that plaintiff's activities of daily living belied his subjective symptom testimony. AR. 26-27. In support of this conclusion, the ALJ cited to evidence demonstrating that plaintiff's function report did not indicate problems with shopping in stores or handling money. AR. 26 (citing AR. 229). The ALJ also cited to evidence that plaintiff did not drive because of his vision problem, but told the examining psychologist that he did some driving. AR. 26 (citing AR. 381).

The ALJ's finding that plaintiff's daily activities are inconsistent with his testimony that he is unable to work is not supported by substantial evidence. First, while the ALJ cited to plaintiff's ability to shop, plaintiff reported that he only shops by computer, which takes approximately 30 minutes. AR. 229. Plaintiff's shopping appears to be a very minor part of plaintiff's day and says little about his ability to communicate or interact with others, fatigue, or the extent of his pain. Moreover, the Ninth Circuit has "repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping ... does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (citing *Fair*, 885 F.2d at 603); *see Reddick*, 157 F.3d at 722 (recognizing "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations").

Regarding his ability to drive, the ALJ referred to evidence wherein plaintiff reported that he does not like to drive because of his reduced vision, *see* AR. 229, and a 2014 treatment note in which plaintiff reported that he only drives in his neighborhood and avoids the freeway because he has lost sensitivity in his hands, AR. 381. As an initial matter, none of this evidence is necessarily inconsistent with plaintiff's testimony, in which plaintiff stated that he drives "poorly" and only drives to the 7-11 store. AR. 41. And even if it were inconsistent, this evidence presents the type of "single discrepancy," which fails to justify discrediting plaintiff's entire testimony. *See Popa*, 872 F.3d at 906-07 (discussing inconsistency between the plaintiff's testimony that

she could not drive because her license was suspended and her comment to a treating physician that she had driven).

Lastly, plaintiff's ability to manage money is primarily a solitary and in-home activity, and has no bearing on his testimony that he is unable to work because he is tired, unable to concentrate, forgetful, and unable to get along with others. There is no evidence in the record that plaintiff was required to work with others in or unable to rest while managing his money. *See generally* AR. 34-54 (hearing testimony), 226-233 (function report). Therefore, without more, plaintiff's ability to manage his own funds does not provide a clear and convincing reason, supported by substantial evidence, to discredit his testimony.

Nor would the record support a finding that plaintiff's activities are transferable to a work setting and that plaintiff spends a substantial part of his day on them, even if the ALJ had made such a finding. *See Smolen*, 80 F.3d at 1284 & n.7. Rather, plaintiff's daily activities are "so undemanding that [they] cannot be said to bear a meaningful relationship to the activities of the workplace." *Orn*, 495 F.3d at 639. *Trevizo v. Berryhill*, 871 F.3d at 871 F.3d 664, 682 (9th Cir. 2017) (Many home activities are not easily transferable to a work environment, "where it might be impossible to periodically rest or take medication."); *See* 20 C.F.R. Pt. 404, Subpart P, Appendix 1, § 12.00 C(3) (A claimant's ability to function in a work environment should not be determined based on an individual's ability to perform tasks in other settings that are less demanding, highly structured, or more supportive.).

Therefore, the ALJ's finding that plaintiff's daily activities are inconsistent with his testimony is not a clear and convincing reason to discount plaintiff's subjective symptom testimony.

B. Treatment history

The ALJ found plaintiff's treatment history suggests that his impairments would not prevent him from working full-time at a modified light exertional level. AR. 224. The ALJ referenced three periods in which plaintiff purportedly failed to seek treatment: (1) plaintiff's gap in treatment for his MS between 2011 and 2013; (2) plaintiff's failure to seek treatment for his back pain and MS after 2014; and (3) plaintiff's failure to seek mental health treatment after 2014. AR. 24-26.

An "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" is a clear and convincing reason for discounting the credibility of a claimant's subjective symptom statements, unless the claimant provides sufficient reasons. *Bunnell v. Sullivan,* 947 F.2d 341, 346–47 (9th Cir. 1991) (en banc); *accord Molina,* 674 F.3d at 1113; *see Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The Ninth Circuit has found that one good reason is a claimant's failure to obtain treatment due to lack of funds. *See e.g.*, *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (citing *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995)).

1. *MS Treatment Between 2011 and 2013*

The ALJ found that plaintiff failed to seek treatment for his MS between 2011 and 2013. AR. 24. The ALJ noted that plaintiff did not have health insurance during this time, but stated that "this is not a persuasive explanation for the long treatment gap[,]"

and reasoned that plaintiff did not seek emergency treatment or treatment from community resources for any symptoms. AR. 24.

Here, while the ALJ considered plaintiff's reason for failing to seek treatment, his lack of healthcare, the ALJ's analysis is contrary to Ninth Circuit law. As the ALJ acknowledges, plaintiff's gap in treatment coincides with a period in which plaintiff did not have health insurance. The Ninth Circuit has held that "disability benefits may not be denied because of the claimant's failure to obtain treatment [he or she] cannot obtain for lack of funds." *See Orn v. Astrue,* 495 F.3d 625, 638 (9th Cir. 2007) (quoting *Gamble v. Chater,* 68 F.3d 319, 321 (9th Cir. 1995)); *Regennitter v. Comm'r of the Soc. Sec. Admin.,* 166 F.3d 1294, 1297 (9th Cir. 1999).

With respect to the ALJ's reasoning that plaintiff did not seek emergency treatment despite being able to do so in the past, the fact that plaintiff sought emergency treatment once in 2012, *see* AR. 24, 433, does not sufficiently rebut plaintiff's explanation that he lacked healthcare. It is not clear to the Court that because plaintiff visited the urgent care once in 2012, that he would have access to routine healthcare between 2011 and 2013. Moreover, the evidence reflects that plaintiff was not aware that he had MS until mid-2013. AR. 282-83, 436-37. One would not expect a claimant to routinely visit the emergency room or urgent care on a frequent basis, especially for an unknown condition. The Court therefore concludes that the ALJ's finding that plaintiff failed to seek treatment is not based on the proper legal standards or supported by substantial evidence.

### 2. *Back Pain and MS Treatment in Late 2014*

Next, the ALJ found that plaintiff has not required opioid pain management or steroid injections for his back pain symptoms. AR. 26. Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of an impairment. *Parra v. Astrue,* 481 F.3d 742, 751 (9th Cir. 2007).

However, contrary to the ALJ's findings, plaintiff treated his pain with topical marijuana product and reported that his symptoms were not improved with physical therapy. AR. 49, 410. Plaintiff was also prescribed and taking Tecfidera, a prescription medication for MS, at the time of the hearing. AR. 48-49. Daily use of a prescribed medication to treat pain is not evidence of conservative treatment, nor does it contradict plaintiff's subjective symptom testimony. *See Akers v. Colvin,* 2014 WL 1236293, at *7 (D. Or. Mar. 25, 2014) (Plaintiff's use of medical marijuana was not a clear and convincing reason to reject her credibility as conservative treatment.).

The ALJ also noted that the evidence failed to show that plaintiff was seeing a specialist for his MS on a regular basis after late 2014 for his MS and back pain. AR. 26. However, the ALJ failed to acknowledge that plaintiff did seek treatment in 2015 and 2016 for his MS, and his back pain was related to that condition. AR. 439-44. Plaintiff had numerous MRIs in 2015 and 2016, which indicated a progression of his MS and related back pain. For example, plaintiff's 2015 thoracic spine MRI showed: "Coincidently, more clearly evident on today's exam is a focal right paracentral disc herniation with slight cephalad extrusion which deforms the right ventral cord just overlying the area of signal abnormality at the T5-6 level." AR. 443. And later in 2016,

another thoracic MRI indicated: "A previous small right paracentral disc protrusion at T5-6 now appears to be a broad-based bulge." AR. 440. A 2016 brain MRI showed: "Stable appearance to multiple scattered demyelinating lesions about the bilateral cerebral hemispheres compatible with history of multiple sclerosis." AR. 442. The record also reflects that plaintiff was under the care of neurologist, Michelle Moon, D.O. in 2016. AR. 436. In October 2014, after six physical therapy sessions, plaintiff reported that therapy and a course of anti-inflammatory medication had not improved his back pain. AR. 413.

Thus, there is evidence in the record that plaintiff sought treatment for his MS and back pain between late 2014 and 2016, and there is no indication that additional treatment or medication was available that might provide any therapeutic effect. Thus, the ALJ's finding is not supported by substantial evidence. *See Orn,* 485 F.3d at 638.

Therefore, the Court concludes that the ALJ's finding that plaintiff's subjective symptom testimony was inconsistent with his treatment history is not supported by substantial evidence.

3. *Mental Health Treatment after 2014*

Next, the ALJ found that plaintiff's limited mental health treatment was inconsistent with his allegations. AR. 26.

Here, the record reflects that plaintiff sought mental health counseling in Seattle once, but was unable to continue because he could not sit in the car and handle the stress of the travel. AR. 52-53 (plaintiff was living in Vancouver, Washington at the time). Here, the ALJ erroneously questioned the severity of plaintiff's symptoms because

plaintiff has not consistently sought mental health treatment without exploring possible explanations for that lack of treatment, including an inability to travel for treatment and a possible causal relationship between the mental illness and failure to seek treatment. *See* SSR 16-3p; *Nguyen v. Chater*, 100 F.3d 1452, 1465 (9th Cir. 1996) ("[I]t is a questionable practice to chastise one with a mental health impairment for the exercise of poor judgment in seeking rehabilitation."). Thus, this is not a clear and convincing reason to reject plaintiff's subjective symptom testimony.

### C. Objective evidence

Determining a claimant's complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. *Regennitter*, 166 F.3d at 1297; *see also Fisher v. Astrue*, 429 F. App'x 649, 651 (9th Cir. 2011). However, an ALJ "may not disregard [a claimant's credibility] solely because it is not substantiated affirmatively by objective medical evidence." *Robbins v. Social Security Administration*, 466 F.3d 880, 883 (9th Cir. 2006); *see Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995); *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995).

The ALJ provided three reasons for discounting plaintiff's statements. AR. 24-27. The Court has determined that the ALJ's first two reasons for discounting plaintiff's subjective symptom testimony – plaintiff's activities and treatment history– are improper. The only remaining reason for discounting plaintiff's complaints is because the complaints are inconsistent with the objective evidence. *See* AR. 24-26. As this is the sole remaining reason and as a claimant's testimony may not be rejected solely on the

basis of inconsistencies with the objective evidence, the Court need not determine if the third reason is proper.

The Court finds the ALJ has not provided legally sufficient reasons for discounting plaintiff's subjective symptom testimony. Accordingly, the ALJ erred.

D. Harmless error

"'[A] reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (quoting *Stout v. Comm'r*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)).

The ALJ failed to give a clear and convincing reason supported by substantial evidence for rejecting plaintiff's subjective symptom testimony. Plaintiff's testimony included limitations greater than those incorporated into the RFC and in the hypothetical questions posed to the VE. For example, plaintiff testified that he is unable to work because he cannot get along with other people, is unable to concentrate, and he is too tired. AR. 39, 44-45. The ALJ found plaintiff has the RFC to perform light work with limitations. AR. 23-24. Therefore, if the ALJ had fully credited plaintiff's testimony, the ultimate disability determination may have changed. Thus, the error was not harmless.

(2) Whether the ALJ failed to fully and fairly develop the record and properly evaluated the medical evidence.

Plaintiff contends that the ALJ failed to obtain medical records from the Vancouver Clinic including plaintiff's primary care physician, Gary Pape, M.D., and his treating neurologist, Dr. Moon. Dkt. 10 at 3. Plaintiff contends the ALJ should have

obtained neuropsychological testing of plaintiff and obtained medical expert testimony to determine whether plaintiff meet Listing 11.09B. Dkt. 10 at 4. Plaintiff also alleges that the ALJ erred in his assessment of the medical opinion evidence. Dkt. 10.

The Court has determined that remand is necessary due to the ALJ's harmful errors regarding plaintiff's subjective symptom testimony. *See* Section 1, *supra.* In light of the inevitable remand, the Court declines to consider whether the ALJ failed to fully and fairly develop the record. Instead, on remand, further evidence may be considered, including additional examinations and, if necessary, medical expert testimony to resolve conflicts and ambiguities in the record. *See Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995) (citations omitted) (the "claimant bears the burden of proving" the "ultimate issue of disability"). Furthermore, the Court directs the ALJ to reassess all evidence as necessary on remand – including the opinion evidence – in light of any additional medical evidence and proper consideration of plaintiff's subjective symptom testimony.

(3) Whether the ALJ improperly determined plaintiff's RFC and the findings at step five.

Plaintiff contends that the ALJ erred in assessing his RFC and finding him not disabled at step 5 of the sequential evaluation process because the RFC and hypothetical questions did not contain all of plaintiff's functional limitations. Dkt. 10 at 18-19. In Section One, the Court concludes that the ALJ committed harmful error when he failed to properly evaluate plaintiff's subjective symptom testimony. The ALJ is directed to re-evaluate the medical evidence, and plaintiff's subjective symptom testimony on remand. *See* Sections 1 and 2, *supra.* Therefore, on remand, the ALJ must

also reassess plaintiff's RFC. *See* Social Security Ruling 96-8p ("The RFC assessment must always consider and address medical source opinions."); *Valentine v. Commissioner Social Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("an RFC that fails to take into account a claimant's limitations is defective"). Because the ALJ must reassess plaintiff's RFC on remand, he must also re-evaluate the findings at Step 5 to determine if there are jobs existing in significant numbers in the national economy that plaintiff can perform in light of the new RFC.

## REMAND INSTRUCTIONS

The parties agree that if the ALJ erred, then further administrative proceedings are warranted. Dkts. 10, 11. On remand, the ALJ is instructed to reassess plaintiff's testimony, the medical evidence, the RFC, and the findings at step five, if necessary.

## CONCLUSION

Based on these reasons, and the relevant record, this matter is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Deputy Commissioner for further proceedings consistent with Order.

**JUDGMENT** is entered for **plaintiff** and the case is closed.

Dated this 25th day of March, 2019.

J. Richard Creatura
United States Magistrate Judge